# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION

## CIVIL NO. 2:07CV20-02
### (2:06CR6-1)

| | |
|---|---|
| TIMOTHY O. BENNETT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND** |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. No response is necessary from the Government.

## I. STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. **28 U.S. C. § 2255**. However,

> [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the

> movant is not entitled to relief in the district court, the judge
> shall make an order for its summary dismissal and cause the
> movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.** The Court, having reviewed the record of criminal proceedings, enters summary dismissal for the reasons stated herein.

## II. PROCEDURAL HISTORY

Petitioner and two co-defendants were charged with conspiracy to distribute and possess with intent to distribute marijuana and aiding and abetting that offense, and with growing marijuana within the Nantahala National Forest and aiding and abetting that offense in violation of 21 U.S.C. §§ 841, 846, and 856(a)(1) and 18 U.S.C. § 2. **Bill of Indictment, filed February 8, 2006**. On June 5, 2006, Petitioner and his attorney signed a written plea agreement with the Government wherein he agreed to plead guilty to the conspiracy charge set forth in Count One of the indictment and the Government agreed to dismiss Count Two. **Plea Agreement, filed June 6, 2006**, **at 1.**

Concerning the penalties, the Petitioner was advised that he faced a statutory minimum term of not less than five years and no more than 40

years imprisonment. *Id*. However, the agreement further provided that if requested by the Government to do so, Petitioner would provide his cooperation, including truthful information about the subject charges and about any other criminal activity which was within his knowledge. *Id*. **at 5**. The agreement stated that in the event the Government determined that Petitioner's cooperation amounted to substantial assistance, the Government would seek a sentence below the mandatory minimum five year term. *Id*. **at 7.**

On June 9, 2006, the parties filed an amended plea agreement which was identical to the original agreement but included an additional paragraph stating, "[t]he parties stipulate and agree that the number of marijuana plants foreseeable by the [Petitioner] was (101) one hundred one plants." **Amended Plea Agreement, filed June 7, 2006, at 2**.

On the same date, Petitioner appeared with counsel before the Magistrate Judge to formally enter his plea. **Rule 11 Inquiry and Order of Acceptance of Plea, filed June 9, 2006.** At that hearing, the Magistrate Judge placed Petitioner under oath and then engaged him in a lengthy colloquy to ensure that his guilty plea was intelligently and voluntarily tendered. In response to the Court's numerous questions, Petitioner

stated that for about six months in 1994, he had participated in out-patient classes for a substance abuse problem. *Id*. **at 2.** However, Petitioner stated that he then was not under the influence of any illicit drugs or alcohol, and was not taking any prescribed medications. *Id*. Petitioner also stated that he was a high school graduate; that his mind was clear, and he understood the purpose of the hearing was to formally enter his guilty plea. *Id.*

Next, Petitioner told the Court that he and his attorney had reviewed the bill of indictment and the plea agreement into which he had entered. *Id*. **at 3.** In addition, Petitioner stated that he understood the elements of the charge to which he was pleading guilty and the corresponding penalties. *Id*. He also stated he understood his right to persist in his plea of "not guilty," to require the Government to prove all of the elements of the offense beyond a reasonable doubt, to have a jury trial with the assistance of counsel, to testify, to confront the witnesses against him, and to cross-examine those witnesses. *Id*. **at 6**. Petitioner stated he understood that by tendering his guilty plea, he was giving up those and certain other rights. *Id.*

Further, Petitioner stated he understood that once he entered his guilty plea, it could not later be withdrawn; that he was entering his guilty plea because he was guilty of the offense charged; that his guilty plea was being voluntarily tendered; that no one had threatened or coerced him into entering his guilty plea; and that no one had made him any promises beyond those set forth in his plea agreement. *Id*. **at 7**. Petitioner also stated that he and counsel had discussed possible defenses to the charge, how the Sentencing Guidelines might affect his case, and that his guilty plea was being tendered as a result of those discussions with counsel. *Id*. **at 5, 7-8**.

Furthermore, Petitioner told the Court that he agreed with the terms of his plea agreement and that he understood and accepted the limitations on his appellate rights as set forth in the agreement. *Id*. **at 5, 7**. Petitioner also told the Court that he was entirely satisfied with the services of his attorney, and he did not have any questions for the Court. *Id*. **at 8**. After hearing Petitioner's answers to the questions contained in the Rule 11 inquiry, the Magistrate Judge found Petitioner's plea was knowingly and voluntarily entered and made and accepted his guilty plea. *Id*. **at 8-9**.

On October 3, 2006, Petitioner appeared before the undersigned for sentencing. At the outset of that proceeding, the Government and Petitioner stipulated to the factual basis supporting Petitioner's guilty plea. **Transcript of Sentencing Hearing, filed November 29, 2007, at 2.**

Thereafter, the Court heard from counsel concerning the appropriate sentence for Petitioner. According to defense counsel, Petitioner was a good father and son who had worked hard to help support his family. *Id*. **at 4.** Counsel stated that although Petitioner had prior convictions on his record, he had managed to remain crime-free for long periods between convictions and, but for one criminal history point, he would have been eligible for a sentence reduction under the Safety Valve provision of 18 U.S.C. § 3553(f). *Id.* **at 4-5**.

Petitioner then addressed the Court stating, *inter alia*, that he was ashamed, and deeply sorry for his misconduct and for hurting so many people. *Id*. **at 6.** Petitioner stated that his involvement in the subject offense had been a small part of his life; and that he initially thought that he was not going to face charges for his offense because North Carolina authorities had declined to prosecute him. *Id*. **at 8-9**. Ultimately, Petitioner asked the Court for mercy. *Id.* Notably, however, Petitioner did not make

a single complaint about defense counsel or her performance; nor did he express any apprehension about having entered into his plea agreement with the Government.

For his part, counsel for the Government told the Court that Petitioner had been videotaped by authorities in a patch of marijuana in 2001, but had not been apprehended because his identity then was unknown. **Id. at 9**. The prosecutor also stated that in 2002, Petitioner and his co-defendants were caught in a different patch of marijuana; that on that occasion, authorities learned that Petitioner had driven his co-defendants, one of whom was 18 years old, from South Carolina to that marijuana patch in North Carolina; and that the three men were in possession of materials which could have been used to plant more marijuana. **Id. at 9-10**. Last, the prosecutor pointed out that Petitioner had a "history of trouble . . . with marijuana"; and that the five-year sentence was applicable as a result of Petitioner's stipulation to involvement with 101 plants. **Id. at 10**.

After hearing from counsel and the Petitioner, the Court sentenced Petitioner to a term of 60 months imprisonment. **Judgment in a Criminal Case, filed October 31, 2006**. Petitioner did not appeal his conviction or

sentence; therefore, the judgment became final ten days later. ***United States v. Wilson*, 256 F.3d 217, 221 (4th Cir. 2001) (Michael, J., concurring).** This motion was filed October 1, 2007, and is, therefore, timely.


## III. DISCUSSION

Petitioner alleges he received ineffective assistance of counsel in that he claims his trial counsel improperly advised him of the consequences of accepting the Government's plea offer and that he received no benefit from his plea agreement.

When alleging a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. ***Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)**. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. ***Id.* at 689**; ***see also, Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1985)**;

***Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983)**; ***Marzullo***

***v. Maryland*, 561 F.2d 540 (4th Cir. 1977)**.

      To demonstrate prejudice, Petitioner must show a probability that the

alleged errors worked to his "'*actual* and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions.'" ***Murray v.***

***Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456**

**U.S. 152, 170 (1982)).**  Under these circumstances, Petitioner "bears the

burden of proving *Strickland* prejudice." ***Fields*, 956 F.2d at 1297 (citing**

***Hutchins*, *supra*, at 1430-31).**  Therefore, if Petitioner fails to meet this

burden, a "reviewing court need not consider the performance prong." ***Id.***

**(citing *Strickland*, *supra*, at 697)**.

      An even higher burden is required for the petitioner who alleges

ineffective assistance of counsel following the entry of a guilty plea.  ***See,***

***Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985); *Fields, supra,* at 1294-99;**

***Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988)**.

> When a [petitioner] challenges a conviction entered after a
> guilty plea, [the] "prejudice" prong of the [*Strickland*] test is
> slightly modified. [The petitioner]  "must show that there is a
> reasonable probability that, but for counsel's errors, he would
> not have pleaded guilty and would have insisted on going to
> trial."

*Id*. (quoting *Hill, supra*, at 59); *accord Fields, supra,* at 1297.

In evaluating a post-guilty plea claim of ineffective assistance of counsel, statements previously made under oath affirming satisfaction with counsel, such as those made by Petitioner here at the Rule 11 hearing, are binding "[a]bsent clear and convincing evidence to the contrary." *Id.* at 1299 (citing *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977)); *accord United States v. Lemaster*, 403 F.3d 216, 220-23 (4th Cir. 2005) (affirming summary dismissal of § 2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing).

Applying the foregoing principles to Petitioner's allegations, it is apparent that he cannot prevail in this matter.  Petitioner does not assert that but for counsel's alleged ineffectiveness, he would have pled not guilty and insisted upon going to trial.  Thus, Petitioner's claim against counsel is doomed by that failure alone.

Petitioner contends that he was improperly advised of the consequences of accepting the Government's plea offer because counsel induced him into believing that the agreement would allow him to receive less than a 60-month sentence.  However, the record of the proceedings in

this case, including the answers provided by Petitioner during his Rule 11 hearing, stand in stark conflict with this belated, self-serving allegation. Petitioner's sworn answers to the Magistrate Judge's questions during the Rule 11 inquiry establish his understanding that he was facing a mandatory minimum five year prison sentence. Furthermore, Petitioner answered that no one had made him any promises other than those set out in his written plea agreement and that he and his attorney had reviewed the plea agreement before the Rule 11 hearing. ***See generally* Rule 11 Inquiry, *supra.***

As for the agreement itself, Petitioner's signature thereon reflects his understanding that his guilty plea would expose him to a sentence of no fewer than five years in prison; that his sentence had not yet been determined; and that "*any estimate from any source, including defense counsel, of the likely sentence [wa]s a prediction rather than a promise* [.]" **Plea Agreement, *supra*, at 1-2 (emphasis added)**. The plea agreement further stated that Petitioner's five year mandatory sentence could only be reduced if he provided what the Government, in its sole discretion, deemed to be substantial assistance and, in turn, the Government made a

successful motion to the Court pursuant to 18 U.S.C. § 3553(e) for a downward departure below the statutory minimum term. *Id. at 7*.

In addition, the transcript of Petitioner's sentencing hearing shows that he addressed the Court at length, but made no mention of any alleged misrepresentations, misstatements, or misconduct by counsel. **Sentencing Transcript,** *supra*. Thus, Petitioner's sworn statements at the Rule 11 and sentencing hearings simply do not support his claim that his plea agreement was induced by a promise of lenience. Moreover, those statements cannot be set aside merely on the basis of his post-judgment assertions to the contrary.

To the extent that Petitioner's claim can be construed as an argument that his guilty plea was coerced by his former attorney, that claim is also belied by the record which shows that during his Rule 11 hearing, Petitioner told the Court that no one had coerced or threatened him into pleading guilty. Again, such a statement "constitute[s] a formidable barrier" to this post-judgment attack. ***Blackledge, supra.***

The Petitioner attaches to his motion three letters he received from his attorney prior to the filing of the plea agreement. He alleges these letters support his arguments that he did not receive the benefit of his plea

agreement and that counsel "induced" him into believing he would receive less than the statutory minimum sentence of 60 months. Counsel's letter of May 10, 2006, shows she made several unsuccessful attempts to contact the Petitioner by phone. ***See* Exhibit 3, *attached to* Petitioner's Motion ("I've been calling your home number this morning and no one is answering and [the phone] is no longer accepting messages. I know this is tough on you, but you will have to deal with this case now.").** Left with the only means by which she could contact the Petitioner, counsel's letter advises Petitioner of the updated trial schedule, the status of the case regarding his co-defendants' plea arrangements; reminded him of the mandatory minimum sentence of five years; and the fact that his only chance to secure a sentence below that term would be to accept the Government's plea offer and be the first to provide his cooperation. ***Id*. ("The first defendant to speak to the prosecutor will get the biggest break, while the last person will get the least amount. If you do want to cooperate, *I want to make sure you can get the biggest break you can.*").**

Again, by letter of May 24, 2006, Petitioner's trial counsel advised him that she still has not heard from him with regard to whether or not he

wished to enter a plea in this case.  ***See* Exhibit 4, *attached to* Petitioner's Motion.**  Counsel advised the Petitioner that his co-defendants had completed their plea negotiations with the Government and would "receive breaks for their assisting the government in the prosecution."  *Id*.

The May 26, 2006, letter from counsel shows her increasing frustration with the Petitioner in her failed attempts to reach him by telephone and his recalcitrant behavior with regard to whether or not to accept the Government's plea offer.  ***See* Exhibit 5, *attached to* Petitioner's Motion ("I have been unsuccessful reaching you by telephone. . . .  You called me and left a message but did not give me a time to all back, just a message that *you* would call.  I have not heard from you yet.  I tried to call again yesterday and today, but you no longer have your answering machine.  I do not know how else to reach you, Tim.") (emphasis added).**  Counsel's letter also stated that she understood Petitioner would be willing to plea in order to "get a reduced sentence," but such reduction would require Petitioner's cooperation with the Government.  *Id*.  Counsel then stated that she was assuming that since the plea agreement was not forthcoming from the

Petitioner, that he had changed his mind and wanted a jury trial.  ***Id.***
**("Though we spoke several weeks ago, you have not sent me the plea**
**agreement.  Since I have not received a response to the letters I have**
**sent, I am assuming you are going to trial[.]").**  Counsel also advised
the Petitioner that one of his co-defendants had entered a guilty plea and
would be testifying against him at trial.  *Id.*

Contrary to the Petitioner's assertions, the Court finds counsel's
letters do not reflect any attempt to coerce Petitioner into signing a plea
agreement.  Rather, she attempted to convey to the Petitioner that time
was of the essence; that if he intended to enter a plea, the sooner he did
so and provided the Government with the requested assistance, the better
the likelihood of him receiving a reduction in the 60-month statutory
minimum sentence.  **Exhibit 3, *supra* ("The first defendant to speak to**
**the prosecutor will get the biggest break, while the last person will**
**get the least amount.  If you do want to cooperate, *I want to make***
***sure you can get the biggest break you can.*").**  The letters also reflect
counsel's diligence (in the face of mounting frustration) in communicating
information of which Petitioner needed to be aware so that he could make
a well-informed decision about whether or not to accept the Government's

plea offer and to provide his assistance.  Based on an objective reading of Petitioner's exhibits as a whole, his argument that counsel's insistence on Petitioner making a decision to plea or go to trial somehow "induced" or coerced him into signing a plea agreement is totally without merit.  Rather, it appears that the Petitioner's indecision regarding plea or trial foreclosed the possibility of the Government making a § 5K1.1 motion (*i.e.*, motion for downward departure for substantial assistance) on his behalf due to the fact that, by the time Petitioner signed his plea agreement, any cooperation he might have offered had been preempted by that given by his co-defendants.

Finally, due in large measure to the astuteness of his trial counsel, the initial plea agreement was amended to lessen Petitioner's sentencing exposure to reflect an involvement with 101 marijuana plants, notwithstanding the fact that the evidence showed he had been cultivating marijuana plants for at least two years.  **Amended Plea Agreement, *supra*, at 2.**  In addition, under the terms of the original and amended plea agreements, the Government agreed to dismiss Count Two, which, if convicted, Petitioner would have been exposed to a maximum of 20 years imprisonment.  The fact that a plea bargain is favorable to a defendant and

that accepting it was "a reasonable and prudent decision" is itself evidence of "[t]he voluntary and intelligent" nature of the plea.  ***See Fields*, 956 F.2d at 1299**.  Thus, Petitioner's claim that he did not receive the benefit of his plea agreement is also flatly rejected.

Petitioner has failed to show why the Court should disregard his earlier sworn representations, including his assurances that his guilty plea was not the result of any extraneous promises of lenience, threats or coercion from any source.  Consequently, his allegation of ineffective assistance of counsel must fail because it is both factually and legally baseless.  Because Petitioner has failed to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed a defendant by the Sixth Amendment,"  the second prong of *Strickland* need not be reached.  As the Court has found that no grounds have been raised which merit relief, the motion is dismissed based on the record before the Court.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is hereby **DENIED**.  A Judgment dismissing the action is filed herewith.


Signed: December 5, 2007


Lacy H. Thornburg
United States District Judge